Martin A. Muckleroy
**MUCKLEROY LUNT, LLC**
Nevada Bar No. 9634
6077 S. Fort Apache Rd., Ste. 140
Las Vegas, NV 89148
Tel.: (702) 907-0097
Email: martin@muckleroylunt.com
[Additional Captions on Signature Page]
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| CHARLES WILLIAMS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CSRA, INC., NANCY KILLEFER, BILLIE IDA WILLIAMSON, SANJU K. BANSAL, JOHN F. YOUNG, CRAIG L. MARTIN, SEAN O'KEEFE, MICHELE A. FLOURNOY, LAWRENCE B. PRIOR, III, KEITH B. ALEXANDER, MARK A. FRANTZ, and MICHAEL E. VENTLING,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(e), 14(d)(4), AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY DEMAND** |

Plaintiff Charles Williams ("Plaintiff"), on behalf of himself and the proposed Class defined herein, brings this class action suit for violations of Sections 14(e), 14(d)(4), and 20(a) of the Securities Exchange Act of 1934. In support of this Class Action Complaint, Plaintiff, by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

## NATURE OF THE ACTION

Plaintiff brings this action on behalf of himself and the public stockholders of CSRA Inc. ("CSRA" or the "Company") against the Company and CSRA's Board of Directors (collectively,

1

the "Board" or the "Individual Defendants," as further defined below) for violations of Sections 14(e), 14(d)(4), and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), §§ 78n(d)(4), 78n(e) and 78t(a) respectively, and U.S. Securities and Exchange Commission (the "SEC") Rules 14d-9 (17 C.F.R. § 240.14d-9) and SEC Regulation G, 17 C.F.R. 244.100 in connection with the proposed merger between CSRA and Red Hawk Enterprises Corp. ("Merger Sub"), a wholly-owned subsidiary of General Dynamics Corporation ("Parent") (collectively, "General Dynamics").

1. On February 9, 2018, the Company announced that it had entered into an agreement and plan of merger (the "Merger Agreement") with General Dynamics, by which General Dynamics will acquire all of the outstanding shares of CSRA common stock through an all-cash tender offer at a purchase price of $40.75 per share (the "Tender Offer").

2. The Tender Offer commenced on March 5, 2018, and the Company concurrently filed a 14D-9 on Schedule 14D-9 (the "14D-9") with the SEC, recommending that the Company's stockholders tender their shares for the Tender Offer price. The Tender Offer is set to expire on April 2, 2018.

3. Plaintiff alleges that the 14D-9 is materially false and/or misleading because, *inter alia*, it fails to disclose certain material internal financial information about the Company, relied on by the Individual Defendants to recommend the Tender Offer and by the Company's financial advisors, Macquarie Capital (USA) Inc. ("Macquarie") and Evercore Group L.L.C. ("Evercore") (collectively, the "Financial Advisors") to render an opinion that the Tender Offer is fair to CSRA stockholders, and certain material information regarding the sale process leading up to the Tender Offer, which omissions render the 14D-9 incomplete and/or misleading.

4. In particular, the 14D-9 omits material information regarding: (i) certain of the Company's financial projections and generally accepted accounting principles ("GAAP") reconciliation of those projections; (ii) the valuation analyses performed by Financial Advisors in support of its fairness opinion; and (iii) certain information regarding the background of the transaction.

5.     The failure to adequately disclose such material information constitutes a violation of §§ 14(e), 14(d)(4), and 20(a) of the Exchange Act, among other reasons, because CSRA stockholders are entitled to such information in order to make a fully-informed decision regarding whether to tender their shares in connection with the Tender Offer.

6.     For these reasons and as set forth in detail herein, the Individual Defendants have violated federal securities laws. Accordingly, Plaintiff seeks to enjoin the Tender Offer or, in the event the Tender Offer is consummated, recover damages resulting from the Individual Defendants' violations of these laws. Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

7.     The claims asserted herein arise under §§ 14(e), 14(d)(4), and 20(a) of the Exchange Act, 15 U.S.C. § 78aa. The Court has subject matter jurisdiction pursuant to § 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

8.     The Court has personal jurisdiction over each of the Defendants because each conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9.     Venue is proper in this District under § 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as pursuant to 28 U.S.C. § 1391, because CSRA is incorporated in this District.

## PARTIES

10.    Plaintiff is, and has been at all relevant times, the owner of shares of CSRA common stock.

11.    Defendant CSRA is a Nevada corporation with its principal executive offices located at 3170 Fairview Park Drive, Falls Church, Virginia 22042. CSRA's common stock trades on the New York Stock Exchange under the ticker symbol "CSRA".

12. Individual Defendant Nancy Killefer has served as a director of the Company since 2015 and the Chairwoman since August 2016.

13. Individual Defendant Billie Ida Williamson has served as a director of the Company since 2015.

14. Individual Defendant Sanju K. Bansal has served as a director of the Company since 2015.

15. Individual Defendant John F. Young has served as a director of the Company since 2016.

16. Individual Defendant Craig L. Martin has served as a director of the Company since 2016.

17. Individual Defendant Sean O'Keefe has served as a director of the Company since 2015.

18. Individual Defendant Michele A. Flournoy has served as a director of the Company since 2015.

19. Individual Defendant Lawrence B. Prior, III has served as President, Chief Executive Officer, and a director of the Company since 2015.

20. Individual Defendant Keith B. Alexander has served as a director of the Company since 2015.

21. Individual Defendant Mark A. Frantz has served as a director of the Company since 2015.

22. Individual Defendant Michael E. Ventling has served as a director of the Company since 2015.

23. The Individual Defendants referred to in paragraphs 13-22 are collectively referred to herein as the "Individual Defendants" and/or the "Board."

## CLASS ACTION ALLEGATIONS

24. Plaintiff brings this action individually and as a class action on behalf of all holders of CSRA stock who are being, and will be, harmed by Defendants' actions described

herein (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to, controlled by, or affiliated with, any Defendant, including the immediate family members of the Individual Defendants.

25. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

26. The Class is so numerous that joinder of all members is impracticable. According to the 14D-9, as of March 1, 2018, there were 165,124,117 shares issued and outstanding. On information and belief, these shares are held by thousands of beneficial holders who are geographically dispersed across the country.

27. There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, inter alia, the following:

    a. whether Defendants have violated Sections 14 and 20 of the Exchange Act, and SEC regulations promulgated thereunder, in connection with the Tender Offer; and

    b. whether Plaintiff and the other members of the Class would be irreparably harmed and/or otherwise damaged were the transaction complained of herein consummated.

28. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

29. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

30. The prosecution of separate actions by individual members of the Class creates a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants.

31.     Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

32.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class a whole.

33.     Accordingly, Plaintiff seeks injunctive and other equitable relief on behalf of himself and the Class to prevent the irreparable injury that the Company's stockholders will suffer absent judicial intervention and in the absent of injunctive relief, seeks to pursue a claim for damages.

## SUBSTANTIVE ALLEGATIONS

### I.     Background and the Tender Offer

34.     CSRA provides a range of IT solutions and professional services and works with government agencies and programs within the United States. The Company offers network and assets protection software products.

35.     On October 26, 2017, CSRA and General Dynamics issued a joint press release announcing the Tender Offer which stated the following, in relevant part:

> **FALLS CHURCH, Va.** – General Dynamics (NYSE: GD) and CSRA (NYSE: CSRA) today announced that they have entered into a definitive agreement under which General Dynamics will acquire all outstanding shares of CSRA for $40.75 in cash. The transaction is valued at $9.6 billion, including the assumption of $2.8 billion in CSRA debt.
>
> "The acquisition of CSRA represents a significant strategic step in expanding the capabilities and customer base of GDIT," said Phebe Novakovic, chairman and chief executive officer of General Dynamics. "CSRA's management team has created an outstanding provider of innovative, next-generation IT solutions with industry-leading margins. We see substantial opportunities to provide cost-effective IT solutions and services to the Department of Defense, the intelligence community and federal civilian agencies. The combination enables GDIT to grow revenue and profits at an accelerated rate. It will allow us to deliver even more innovative, leading-edge solutions to our customers."
>
> Larry Prior, chief executive officer and president of CSRA, said, "Our combination with General Dynamics represents an excellent outcome for CSRA's stockholders, employees and customers. It builds on strong shared values, culture

and a passion for serving our customers' missions. We believe that this combination creates a clear, differentiated leader in the Federal IT sector, with a full spectrum of enterprise IT capabilities, including unique depth in Next-Gen offerings in conjunction with our commercial IT alliance partners."

Novakovic continued, "I am very pleased to welcome CSRA's talented leadership team and employees. This combination brings together two industry leaders with highly complementary capabilities to create a strong business with approximately $9.9 billion in revenue and double-digit EBITDA margins in the consolidating Government Technology Services sector."

General Dynamics expects the transaction to be accretive to GAAP earnings per share and to free cash flow per share in 2019, and expects to generate estimated annual pre-tax cost savings of approximately 2 percent of the combined company's revenue by 2020. We are committed to maintaining our strong credit ratings and using our robust cash flow for reduction of debt from the transaction, continuation of our dividend policy and the flexible deployment of capital, including ongoing investment in the business.

**Transaction Terms and Financing**

Under the terms of the agreement, which has been unanimously approved by the Board of Directors of both companies, a subsidiary of General Dynamics will commence a cash tender offer to purchase all of the outstanding shares of CSRA common stock for $40.75 per share in cash. The tender offer is subject to customary conditions, including antitrust clearance and the tender of a majority of the outstanding shares of CSRA common stock. Following successful completion of the tender offer, General Dynamics would acquire all remaining shares not tendered in the offer through a merger at the same price as in the tender offer. General Dynamics expects to complete the acquisition in the first half of 2018.

We anticipate financing the transaction through a combination of available cash and new debt financing. Upon completion of the transaction, General Dynamics anticipates retaining strong credit ratings with net debt of approximately $10.5 billion.

36. The Tender Offer appears inadequate in light of the Company's recent financial performance and prospects for future growth. For instance, the Company reported 92% EBITDA growth and almost 250% Net Income Growth for 2017.

37. Thus, it appears that CSRA is well-positioned for financial growth, and that the Tender Offer fails to adequately compensate the Company's shareholders. It is imperative that Defendants disclose the material information they have omitted from the 14D-9, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Tender Offer for themselves and make an informed decision concerning whether to tender their shares.

## II.     The 14D-9 Omits Material Information

38.     On March 5, 2018, CSRA filed the 14D-9 with the SEC in support of the Tender Offer.  As alleged below and elsewhere herein, the 14D-9 contains material misrepresentations and omissions of fact that must be cured to allow CSRA's stockholders to make an informed decision with respect to the Tender Offer.  Specifically, the 14D-9 omits material information regarding: (i) certain of the Company's financial projections and generally accepted accounting principles ("GAAP") reconciliation of those projections; (ii) the valuation analyses performed by the Company's financial advisors in support of their respective fairness opinions; and (iii) the sale process leading up to the Tender Offer.

*The Company's Financial Forecasts*

39.     The 14D-9 discloses the projections of non-GAAP metric Adjusted EBITDA, which were developed by the Company's senior management, relied upon the Board in recommending the Tender Offer, and utilized by the Financial Advisors in rendering their respective fairness opinions.  14D-9, 31-33.

40.     However, the 14D-9 fails to disclose how Adjusted EBITDA is calculated, the values of the underlying line items, or a reconciliation of Adjusted EBITDA to its most comparable GAAP equivalent and disclose the projected GAAP equivalent measure, e.g., net income. 14D-9, 33.

41.     When a company discloses non-GAAP financial measures in a 14D-9 that were relied on by a board of directors to recommend that shareholders exercise their corporate suffrage rights in a particular manner, the Company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP.  17 C.F.R. § 244.100.

42. Indeed, the SEC has increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders. Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as CSRA included in the 14D-9 here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[1]

43. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[2] Indeed, the SEC's Division of Corporation Finance released a new and updated Compliance and Disclosure Interpretation ("C&DIs") on the use of non-GAAP financial measures to clarify the extremely narrow and limited circumstances, known as the business combination exemption, where Regulation G would not apply.[3]

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html.

[2] *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

[3] *Non-GAAP Financial Measures*, U.S. Securities and Exchange Commission (Oct. 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm#101. To be sure, there are other situations where Regulation G would not apply but are not applicable here.

44. More importantly, the C&DI clarifies when the business combination exemption does not apply:

> There is an exemption from Regulation G and Item 10(e) of Regulation S-K for non-GAAP financial measures disclosed in communications subject to Securities Act Rule 425 and Exchange Act Rules 14a-12 and 14d-2(b)(2); it is also intended to apply to communications subject to Exchange Act Rule 14d-9(a)(2). This exemption does not extend beyond such communications. Consequently, if the same non-GAAP financial measure that was included in a communication filed under one of those rules is also disclosed in a Securities Act registration statement, proxy statement, or tender offer statement, this exemption from Regulation G and Item 10(e) of Regulation S-K would not be available for that non-GAAP financial measure.

*Id.*

45. Thus, the C&DI makes clear that the so-called "business combination" exemption from the Regulation G non-GAAP to GAAP reconciliation requirement applies solely to the extent that a third-party such as financial banker has utilized projected non-GAAP financial measures to render a report or opinion to the Board. To the extent the Board also examined and relied on internal financial projections to recommend a transaction, Regulation G applies.

46. Because the 14D-9 explicitly discloses that the Projections were utilized by the Board in connection with its evaluation of the Tender Offer, 14D-9 31, no exemption from Regulation G is applicable.

47. Thus, in order to bring the 14D-9 into compliance with Regulation G as well as cure the materially misleading nature of the financial projections under SEC Rule 14D-9 as a result of the omitted information on page 33, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

48. At the very least, the Company must disclose the line item projections for the financial metrics that were used to calculate the aforementioned non-GAAP measures. Such projections are necessary to make the non-GAAP projections included in the 14D-9 not misleading. Indeed, the Defendants acknowledge the misleading nature of non-GAAP projections as CSRA stockholders are cautioned:

> Non-GAAP financial measures should not be considered in isolation from, or as a substitute for, financial information presented in compliance with GAAP,

and non-GAAP financial measures as used by the Company may not be comparable to similarly titled amounts used by other companies.

14D-9, 32.

49.     Clearly, shareholders would find the aforementioned information material since the Board's unanimous recommendation that shareholders tender their shares in connection with the Tender Offer was based in part on the following:

> Best Strategic Alternative for Maximizing Stockholder Value. Our Board of Directors determined, after a thorough review of strategic alternatives and discussions with our management and its financial and legal advisors, that the Offer Price is more favorable to the Company's stockholders than the potential value that might have resulted from other strategic options available, including, but not limited to, remaining a standalone public company.

14D-9, 29.

**The Financial Advisors' Valuation Analyses, Fairness Opinions, and Prior Engagement's by the Company**

50.     The financial projections at issue were relied upon by the Company's financial advisors, Evercore and Macquarie, in connection with their valuation analyses and respective fairness opinions. 14D-9, 36, 47. The opacity concerning the Company's internal projections renders the valuation analyses described below materially incomplete and misleading, particularly as companies formulate non-GAAP metrics differently. Once a registration statement discloses internal projections relied upon by the Board, those projections must be complete and accurate.

51.     With respect to Evercore's *Discounted Cash Flow Analysis* ("DCF"), the 14D-9 discloses that Evercore estimated the implied present value of CSRA by calculating the present value of CSRA's future unlevered free cash flows ("UFCF"), which Evercore generated utilizing the Company's internal financial projections. 14D-9, 36. The 14D-9 defines UFCF as "EBIT, less income tax expense, capital expenditures, increases in net working capital and certain other cash expenses, as applicable, plus depreciation and amortization." 14D-9, 36. However, the

14D-9 fails to disclose: (i) the actual calculated values of the projected UFCF; or (ii) the line items used in its calculation.

52. Similarly, with respect to Macquarie's *Discounted Cash Flow Analysis*, the 14D-9 discloses that Macquarie also estimated the implied present value of CSRA by calculating the value of CSRA's UFCF, which Macquarie generated using the Company's internal financial projections. 14D-9, 47. The 14D-9 fails to disclose how Macquarie calculated UFCF, and whether it was different from the UFCF projections calculated in Evercore's DCF analysis. 14D-9, 47.

53. These key inputs are material to CSRA shareholders, and their omission renders the summaries of Financial Advisors' DCF valuation analysis incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id*. As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value . . . . The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78.

54. Further, the 14D-9 discloses that both Evercore and Macquarie have provided financial services to the Company and General Dynamics in the past. 14D-9, 42, 47. Nevertheless, the 14D-9 fails to disclose the amount of compensation that either of the Financial Advisors have received in violation of Item 1015 of SEC Regulation M-A, which requires disclosure of "any compensation received [in the past two years] or to be received as a result of the relationship . . . ." 17 C.F.R. § 229.1015.

55.     Notwithstanding the violation of SEC Regulations, this information is clearly material to shareholders as it provides clarity to the Financial Advisors' prior interests and would allow shareholders to gauge the veracity of their respective fairness opinions. As a result, this omitted information renders the 14D-9 materially misleading.

56.     Clearly, shareholders would find the aforementioned information material since the Board's unanimous recommendation that shareholders tender their shares in connection with the Tender Offer was based in part on the following:

> *Evercore*: The financial analyses reviewed by Evercore with our Board of Directors as well as the oral opinion of Evercore rendered to our Board of Directors on February 9, 2018 (which was subsequently confirmed in writing by delivery of Evercore's written opinion addressed to our Board of Directors dated February 9, 2018), as to, as of February 9, 2018, the fairness, from a financial point of view, to the holders of Common Stock other than Parent, Purchaser and their respective affiliates (collectively, the "Excluded Holders"), of the consideration to be received by such holders in the Offer and the Merger.
>
> *Macquarie Capital*: The financial analyses reviewed by Macquarie Capital with our Board of Directors as well as the oral opinion of Macquarie Capital rendered to our Board of Directors on February 9, 2018 (which was subsequently confirmed in writing by delivery of Macquarie Capital's written opinion addressed to our Board of Directors dated February 9, 2018), as to, as of February 9, 2018, the fairness, from a financial point of view, to the holders of Common Stock other than the Excluded Holders of the consideration to be received by such holders in the Offer and/or the Merger pursuant to the Merger Agreement.

14D-9, 35.

**The Sale Process**

57.     The 14D-9 discloses that the Company entered into a **confidentiality agreement** with General Dynamics, which contained a standstill provision. 14D-9, 19. The 14D-9 also discloses that the Company entered into a **nondisclosure agreement** with Company A and Company B, respectively, 14D-9, 20, and further discloses that:

> Subsequent to the execution of the merger agreement with General Dynamics and in advance of public announcement of the transaction, each of Company A and Company B sought to engage with CSRA regarding negotiation of a potential transaction. In accordance with the terms of the merger agreement, CSRA did not engage with Company A and Company B.

14D-9, 27.

58. The 14D-9 does not disclose whether the agreements entered into with Company A or Company B contained standstill provisions or "don't ask, don't waive" provisions, which would prevent them from making a public offer for the Company. Clearly, CSRA shareholders would find this information material considering that both Company A and Company B had made offers, which were valued above, $41.00 per share and $42.00 per share, General Dynamic's $40.75 per share offer, which the Board ultimately accepted.

59. Compounding on the importance and materiality of the information above is the disclosure that: "There have been preliminary discussions between General Dynamics Information Technology and certain executive officers of the Company regarding post-closing employment arrangements." 14D-9, 16. The 14D-9 fails to disclose anything further regarding these preliminary discussions, including, but not limited to, which members of management had engaged in discussions, the extent of those discussions, or the timing of those discussions.

60. Clearly, shareholders would find the aforementioned information material since the Board's unanimous recommendation that shareholders tender their shares in connection with the Tender Offer was based in part on the following:

> *Competitive Process.* Our Board of Directors considered the fact that the Company received proposals from and engaged in significant arm's-length negotiations with three parties that it believed were logical potential buyers, including Parent. See Item 4. "The Solicitation or Recommendation—Background of the Offer and the Merger."
>
> *Negotiation Process.* Our Board of Directors considered the enhancements that the Company and its advisors were able to obtain as a result of robust arm's-length negotiations with Parent, including the increases in the Offer Price proposed by Parent from the time of its initial indication of interest to the end of the negotiations, and inclusion of provisions in the Merger Agreement that increase the likelihood of completing the Offer and consummating the Merger.

14D-9, 28.

61. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to CSRA's stockholders. Accordingly, based on the foregoing disclosure deficiencies in the 14D-9, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that CSRA stockholders will suffer, absent judicial

intervention, if CSRA's stockholders are required to decide whether or not to tender their shares without the above-referenced material misstatements and omissions being remedied.

## CLAIMS FOR RELIEF

### COUNT I
### Claims Against All Defendants for Violations of § 14(e) of the Securities Exchange Act of 1934

62. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

63. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

64. As discussed above, CSRA filed and delivered the 14D-9 to its stockholders, which Defendants knew, or recklessly disregarded, contained material omissions and misstatements described herein.

65. Defendants violated §14(e) of the Exchange Act by issuing the 14D-9 in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in connection with the tender offer commenced in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the 14D-9 failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

66. The 14D-9 was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the tender offer, the intrinsic value of the Company, the Company's financial projections, and Financial Advisors' valuation analyses and resultant fairness opinion.

67. In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of § 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the 14D-9, Defendants were aware of this information and their obligation to disclose this information in the 14D-9.

68. The omissions and misleading statements in the 14D-9 are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the 14D-9 as altering the "total mix" of information made available to stockholders.

69. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the 14D-9, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the 14D-9, rendering certain portions of the 14D-9 materially incomplete and therefore misleading.

70. The misrepresentations and omissions in the 14D-9 are material to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

**COUNT II**
**Claims Against All Defendants for Violations of § 14(d)(4) of the Securities Exchange Act of 1934 and SEC Rule 14d-9 (17 C.F.R. § 240.14d-9)**

71. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

72. Defendants have caused the 14D-9 to be issued with the intention of soliciting stockholder support of the Tender Offer.

73. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

74. The 14D-9 violates § 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the 14D-9 false and/or misleading.

75. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the 14D-9, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the 14D-9, rendering certain portions of the 14D-9 materially incomplete and therefore misleading.

76. The misrepresentations and omissions in the 14D-9 are material to Plaintiff, and Plaintiff and CSRA stockholders will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

77. The misrepresentations and omissions in the 14D-9 are material to Plaintiff, and Plaintiff and CSRA stockholders will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

**COUNT III**
**Against the Individual Defendants for**
**Violations of § 20(a) of the 1934 Act**

78. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

79. The Individual Defendants acted as controlling persons of CSRA within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of CSRA and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the 14D-9, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

80. Each of the Individual Defendants was provided with or had unlimited access to copies of the 14D-9 alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

81. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein and exercised the same.  The 14D-9 contains the unanimous recommendation of the Individual Defendants to approve the Tender Offer.  They were thus directly involved in the making of the 14D-9.

82. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

83. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) of the 1934 Act and Rule 14d-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Enjoining Defendants and all persons acting in concert with them from proceeding with the Tender Offer or consummating the Tender Offer, unless and until the Company discloses the material information discussed above, which has been omitted from the 14D-9;

C. In the event Defendants consummate the Tender Offer, awarding damages to Plaintiff and the Class;

D.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 6, 2018

                                        **MUCKLEROY LUNT, LLC**

By: */s/ Martin A. Muckleroy*
Martin A. Muckleroy
Nevada Bar No. 9634
6077 S. Fort Apache Rd., Ste. 140
Las Vegas, NV 89148
Tel.: (702) 907-0097
Email: martin@muckleroylunt.com

**FARUQI & FARUQI, LLP**

James M. Wilson, Jr.
685 Third Avenue
New York, NY 10017
Tel: (212) 983-9330
Facsimile: (212) 983-9331
Email: jwilson@faruqilaw.com

*Counsel for Plaintiff*